IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES W. ARCHER, et al.,          :

    Plaintiffs,                   :

v.                                :
                                  Civil Action No. GLR-12-1099

FREEDMONT MORTGAGE CORPORATION,   :
et al.,
                                :

    Defendants.
                                :

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Plaintiffs James Archer, John DeSantis, Vernon Tydings, and Craig Vanik's (collectively the "Plaintiffs") Motion to Facilitate Identification and Notification of Similarly Situated Employees. (ECF No. 16). Plaintiffs allege that under 29 U.S.C. § 216(b) (2012) of the Fair Labor Standards Act ("FLSA") and relevant case law, Defendants Freedmont Mortgage Corporation ("Freedmont"), Gateway Funding Diversified Mortgage Services Limited Partnership ("Gateway"), Carl Delmont, and Jason Delmont (collectively the "Defendants") should be compelled to produce contact information for persons Plaintiffs contend are similarly situated prospective plaintiffs.

The question before the Court is whether Plaintiffs have put forward sufficient evidence that the alleged potential class

members are similarly situated so as to warrant court-facilitated notice to the putative class members and conditional class certification. The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011). Because a substantial individualized inquiry would be required for each prospective class member, and Plaintiffs have not met the threshold burden to afford conditional certification, the Court concludes that conditional class certification is inappropriate, and Plaintiffs' Motion will be denied.

## I.   BACKGROUND[1]

Plaintiffs were employed as loan officers by Defendants, beginning as early as 2002 through 2011. Their jobs entailed selling residential mortgage loans during the statutory period. In accordance with their employment contract, Plaintiffs derived compensation exclusively from commissions on the loans they sold. Plaintiffs never received or demanded hourly wages.

Though Plaintiffs solicited their own clients, they were also given leads that were generated by Defendants' advertising. For that reason, Plaintiffs were obligated to spend one day each week in Defendants' offices to field phone calls from customers seeking to learn more about Defendants' loans. Otherwise,

---

[1] Unless otherwise noted, the following facts are taken from the Complaint, Motion to Facilitate Identification and Notification of Similarly Situated Employees, and Motion for Summary Judgment.

Plaintiffs were free to work from home or elsewhere.  Plaintiffs also determined the number of hours they worked each day.[2]

Pursuant to their employment contracts, Plaintiffs were expected to perform the majority of their jobs outside the office via face-to-face meetings with prospective clients.[3] Indeed, Defendants strongly discouraged the solicitation of sales by phone or email.

Defendants contend they did not keep track of Plaintiffs' time, supervise their activities while in the office, or have any way of knowing how often or for how many hours Plaintiffs worked out of the office.  (Id.)  Nevertheless, Plaintiffs contend they worked in Defendants' office approximately forty to fifty hours each week.  (See Archer Dep. 76:12-16, June 19, 2012, ECF No. 21-3; DeSantis Dep. 40:3-17, June 19, 2012, ECF No. 21-4; Tyings Dep. 24:19-25:12, June 19, 2012, ECF No. 21-6; Vanik Dep. 27:1-11, June 19, 2012, ECF No. 21-7).[4]

Mr. Archer worked for Defendants from approximately April

---

[2] There is some evidence in the record that Defendants strongly encouraged Plaintiffs to work in the office to field leads as often as possible.  (See DeSantis Dep. 34:13-15).

[3] Although only Mr. Tydings and Mr. Vanik signed acknowledgement forms detailing the scope of their employment, during deposition Mr. Archer and Mr. DeSantis confirmed the scope of their employment was identical to Mr. Tydings and Mr. Vanik.  (See Archer Dep. 31:7-18; DeSantis Dep. 58:6-59:4).

[4] Mr. Vanik and Mr. Tydings later indicated, via individual declarations, that they "regularly worked as much as fifty-five hours per week.  (Vanik Decl. ¶ 3, ECF No. 16-3; Tydings Decl. ¶ 3, ECF No. 16-2).

2011 through December 2011.  Mr. Archer alleges he was paid only $31 during his tenure with Defendants.  Mr. DeSantis worked for Defendants from approximately mid-March 2011 to the end of June 2011.  Mr. DeSantis contends that during his stint with Defendants, he was paid only one commission check in the amount of $2,752.51.  Mr. Tydings worked for Defendants from 2002 until September 14, 2011.  Mr. Tydings alleges he experienced many pay periods in which he received no wages.  Finally, Mr. Vanik worked for Defendants from late 2008 through July 15, 2011.  Mr. Vanik asserts he received less than minimum wages or no wages for various pay periods during his employment with Defendants.

Plaintiffs instituted a four-count action against Defendants on May 31, 2012, alleging violations of: (1) FLSA § 206(a)(1); (2) FLSA § 207; (3) Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-415 and 3-420 (West 2012); and (4) Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501(c)(2)(ii) (West 2012).  Thereafter, on June 27, 2012, Plaintiffs filed the instant Motion.  Defendants filed an Opposition on July 5, 2012, and Plaintiffs filed a Reply on July 10, 2012.

## II.  DISCUSSION

### A.  Standard of Review

Under the FLSA, a collective action for unpaid overtime wages may be maintained "by any one or more employees for and in

4

behalf of himself or themselves and other employees *similarly situated.*" 29 U.S.C. § 216(b) (2012) (emphasis added). Section 216(b) provides "an 'opt-in' scheme whereby potential plaintiffs must affirmatively notify the court of their intention to become a party to the collective action." Marroquin v. Canales, 236 F.R.D. 257, 259 (D.Md. 2006).  "To effectuate the remedial purpose of this act, it is well settled that district courts have the discretion, in appropriate cases, to allow such claims to proceed as a collective action and to facilitate notice to potential plaintiffs." Id. (citing Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 519 (D.Md. 2000)).

"In deciding whether to certify a collective action under the FLSA, courts generally follow a two-stage process." Syrja v. Westat, Inc., 756 F.Supp.2d 682, 686 (D.Md. 2010). The first stage, called the "notice stage," generally occurs before much, if any, discovery has taken place.  At this time, the court makes a threshold determination of "whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." Id. (quoting Camper, 200 F.R.D. at 519).  At the second stage, following the conclusion of discovery, "the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] 'similarly situated' in accordance with the requirements of § 216, and

renders a final decision regarding the propriety of proceeding as a collective action." Id. (quoting Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D.Md. 2007)).

At the first stage, the plaintiff must "make a preliminary factual showing that a similarly situated group of potential plaintiffs exists." Quinteros v. Sparkle Cleaning, Inc., 532 F.Supp.2d 762, 771 (D.Md. 2008) (internal quotation marks and citations omitted). While the plaintiff need only put forward "relatively modest" evidence at this stage, D'Anna v. M/A-COM, Inc., 903 F.Supp. 889, 894 (D.Md. 1995), "mere allegations in the complaint would not suffice." Quinteros, 532 F.Supp.2d at 772.

A successful showing often consists of a demonstration that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." Choimbol v. Fairfield Resorts, Inc., 475 F.Supp.2d 557, 564 (E.D.Va. 2006); see Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988), aff'd in part, 862 F.2d 439, 444 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989) (noting that, with initial collective action certifications under § 216(b), "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan").

"When sufficient evidence in the record at the initial

6

'notice' stage makes it clear that notice is not appropriate, however, a court can . . . deny certification outright." Purdham v. Fairfax Cnty. Pub. Sch., 629 F.Supp.2d 544, 547 (E.D.Va. 2009). "In particular, a court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require 'substantial individualized determinations for each class member.'" Syrja, 756 F.Supp.2d at 686 (quoting Purdham, 629 F.Supp.2d at 549); see also England v. New Century Fin. Corp., 370 F.Supp.2d 504, 511 (M.D.La. 2005) (finding conditional certification inappropriate where adjudication of a collective action would have required factual inquiries into employment relationships involving different managers at different geographic locations throughout the country, and where the court concluded that a finding of liability at one location would not necessarily lead to a finding of liability at another location).

**B.   Analysis**

Plaintiffs' Motion is denied because a substantial individualized inquiry would be required for each prospective class member, and Plaintiffs have not met the threshold burden to afford conditional certification.

**1.   Manageability**

The Court is persuaded that a grant of conditional class certification is inappropriate in this case because it would

7

require "substantial individualized determinations for each class member." See Purdham, 629 F.Supp.2d at 549.

The central question for conditional certification and notice is whether the plaintiffs have made the required preliminary factual showing that a "similarly situated" group of potential plaintiffs exists. Quinteros, 532 F.Supp.2d at 771 (citing Camper, 200 F.R.D. at 519). A determination of whether a manageable class of plaintiffs exists is left to the sound discretion of the district court. Syrja, 756 F.Supp.2d at 689-90. In reaching its answers, however, the court should be guided by the remedial purpose of the FLSA. See Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006) (discussing the need to apply the FLSA broadly to effectuate its remedial purpose). The Supreme Court has noted that § 216(b) is based on a theory of judicial economy, under which "[t]he judicial system benefits by *efficient resolution* in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989) (emphasis added).

In their Motion, Plaintiffs argue that conditional certification is appropriate in this case because:

> [e]ven at this early stage of the case, when no discovery has been provided by Defendants, it is clear the parties all agree that Plaintiffs [sic] and those similarly situated individuals to whom Plaintiffs seek to send notice to [sic] all have the following things

8

>in common: (1) they all worked for at least one of the Defendants as loan officers; (2) they all share the primary job duty of selling at least one of the Defendants' mortgage products; (3) they were all uniformly classified by at least one of the Defendants as exempt pursuant to the FLSA's outside sales exemption; and (4) as a result of Defendants' uniform classification decision, they were not paid overtime wages when they worked more than forty (40) hours in a workweek.

(Pls.' Reply at 1; ECF No. 20). While at first blush these allegations appear to describe a homogenous class, Plaintiffs' acknowledgement—that they did not (1) keep weekly timesheets, (2) maintain separate records of the hours they actually worked, or (3) report their hours to Defendants—coupled with Defendants' contention—that they did not (1) keep track of Plaintiffs' time, (2) supervise their activities while in the office, or (3) have any way of knowing how often or for how many hours Plaintiffs worked out of the office—is fatal to Plaintiffs' Motion. Moreover, the record indicates that in addition to employing loan officers designated as outside salesmen, Defendants employed loan officers that were specifically classified as inside salesmen. (Geeson Aff. ¶ 4, ECF No. 23-1). These considerations are clearly problematic. The determination of liability in this case—as well as the calculation of damages, should the Court or a jury ultimately find in favor of Plaintiffs—would require a complex reconstruction not only of the Plaintiffs' work hours, but also those of each member of the

proposed class.

There can be no doubt that, ultimately, the adjudication of multiple claims in this case would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries. At a minimum these inquiries would require an examination of each potential class member's job duties, hours worked, place where he or she performed his or her work, level of supervision, whether he or she recorded his or her time, and other factors surrounding job scheduling and performance.

Thus, to conditionally certify a class in the present case would not, in the Court's judgment, lead to the "efficient resolution" of the claims at issue.

### 2. Threshold Burden

The court also denies Plaintiffs' Motion because Plaintiffs have not met the threshold burden to afford conditional certification.

"Potential plaintiffs will generally be considered similarly situated when, collectively, they 'were victims of a common policy or scheme or plan *that violated the law*.'" Myles v. Prosperity Mortg. Co., No. CCB-11-1234, 2012 WL 1963390, at *7 (D.Md. May 31, 2012) (quoting Marroquin, 236 F.R.D. at 260) (emphasis added).

As noted above, Plaintiffs argue a conditional grant of

certification is appropriate because all loan officers were categorized as exempt, had the primary duty of selling loans, and were not paid overtime wages when they worked more than forty hours a week. The Court cannot agree. This Court has previously held that "[c]lassifying loan officers as exempt, without more, does not violate the law. Rather, such a classification violates the law only to the extent that the officers did not meet the exemption requirements in the appropriate FLSA regulation." Id. at *7.

The relevant clause in the FLSA regulation requires employees classified as exempt as "outside salesman" to be "customarily and regularly engaged away from the employer's place or places of business in performing [their] primary duty." 29 C.F.R. § 541.500(a) (2012). Significantly, Defendants dispute Plaintiffs' contention that all loan officers were categorized as exempt. (See Geeson Aff. ¶ 4) ("Freedmont employed and employs inside salesmen, outside salesmen and loan processors."). This revelation clearly eviscerates Plaintiffs argument that prospective plaintiffs' claims would stem from common issues of law and fact arising from the same alleged discriminatory activity.

Defendants do not dispute, however, that all loan officers had the primary duty of selling loans, so the relevant fact is the amount of time spent outside the office. Yet the only

...
...

evidence Plaintiffs provide regarding the amount of time other prospective plaintiff-loan officers spent outside the office are their declarations, which merely allege that Defendants failed to pay any base salary, regular wage, or overtime pay, although loan officers regularly worked as much as fifty-five hours per week. (Tydings Decl. at 1; see also Vanik Decl. at 1). These declarations, however, are unspecific and contradicted by Defendants and evidence in the record.

For example, Plaintiffs do not allege Defendants suffered or permitted prospective plaintiffs to work regular and overtime hours as inside salesmen. Indeed, Plaintiffs concede that they never reported their hours to Defendants. Additionally, Defendants contend they did not keep track of Plaintiffs' time, supervise their activities while in the office, or have any way of knowing how often or for how many hours Plaintiffs worked out of the office. Defendants' contentions are supported by both Mr. Archer and Mr. DeSantis, who admit that Carl Delmont could not accurately state when they were in the office because "there were a number of days when [Carl Delmont] was not in the office" and "[t]here were many days when [Carl Delmont] was in the office but [Mr. Archer and Mr. DeSantis] did not have any contact with him." (Archer Decl. ¶¶ 4-5, ECF No. 21-2; DeSantis Decl. ¶¶ 4-5, ECF No. 21-2). Moreover, during his deposition, Mr. Vanik testified that at least one of the prospective

plaintiffs, Tamara Sue Zambito, who presumably held the same job title as him, "was rarely in the office." (Vanik Dep. 94:17-95:7). This acknowledgment plainly undermines his allegation that a class of similarly situated plaintiffs exists.

As a result, in the Court's judgment, Plaintiffs have failed to meet the conditional certification burden.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion to Facilitate Identification and Notification of Similarly Situated Employees (ECF No. 16).

Entered this 7th day of January, 2013

/s/
_____
George L. Russell, III
United States District Judge